James v. Borgeois.

JOHN D. JAMES v. EDMUND BORGEOIS.

1. AGENT. *When justified for receiving Confederate money for principal's property.* In April, 1862, when the city of Memphis was in danger of Federal occupancy, and it was the policy of the Confederate authorities then in control of the city to order the removal and destruction of supplies accumulated there, an agent in charge of goods stored at that place, held justified in selling the same for Confederate money, the only currency then in circulation there, without express authority from his principal.

2. SAME. *Conversion. What not.* Afterwards, in 1864, communication between them having been so cut off as to prevent the agent from transmitting the currency to the principal, the former, in consequence

of the continuing diminution in the value of the money, invested it in other goods, which he sold, realizing a certain sum therefor.

*Held*, That under the circumstances, the agent was not guilty of conversion in so investing the money, but was properly chargeable for the amount of the sale.

### FROM DAVIDSON.

Appeal from the Circuit Court. NATHANIEL BAXTER, Judge.

NEIL S. BROWN for James.

DEMOSS & MALONE for Borgeois.

NICHOLSON, C. J., delivered the opinion of the Court.

Borgeois commenced his suit in the Circuit Court of Davidson County against James, to recover the value of a large lot of sugar and molasses, which he alleges he consigned to Payne, James & Co., at Nashville, and which he avers was either converted by James, a member of that firm, to his own use, or that he sold the same as agent of Borgeois, and never accounted for the proceeds. The declaration contains several counts—one on an account for the sugar and molasses, one for money had and received, and one for a conversion.

Under the charge of the Court the jury found a verdict for plaintiff for $3,400, on which there was judgment, from which James has appealed.

There is nothing in the verdict indicating on which of the counts it was based; but after carefully examining the proof in the record, and the charge of the

Court, we have no doubt the verdict was based on the count for money had and received.

The facts, as we find them in the bill of exceptions, are as follows: Early in 1862, Borgeois, of New Orleans, made a large shipment of sugar and molasses to Payne, James & Co., at Nashville, but the goods were stopped at Memphis and stored, in consequence of the condition of the country growing out of the pending war. James went to Memphis, where he met Borgeois, and we think the sugar and molasses were placed in charge of James to do the best he could with them as the agent of Borgeois. This took place in April, 1862, and at a time when it was apprehended that the city of Memphis would soon fall into the hands of the Federal army. It was the policy of the Confederate military authorities, then in possession of Memphis, to order the removal or distruction of the sugar and molasses, which had accumulated there in large quantities, to prevent them from falling into the hands of the Federal military. Under this state of things James sold a portion of the sugar and molasses, and received payment in Confederate money, that being the only currency then in circulation.

Whether James had express authority to sell for Confederate money or not, it is clear that the condition of things at the time fully justified him in making the sales, and receiving the Confederate money. In doing so there was no conversion, but he held the proceeds of the sale as the agent of Borgeois.

It appears that James was unable to transmit the

money in consequence of the communication being cut off by the occupation of New Orleans by the Federal military authorities.    He seems to have kept the Confederate money until 1864, when, in consequence of its continuing diminution in value, he invested it in tobacco and sheeting.    Under the circumstances, he was not guilty of a conversion in so investing the money, as it was an act of prudent precaution to avoid the total loss of the currency from continued depreciation.    It appears that he realized from the tobacco $1,800, and from the sheeting $1,600, making $3,400—the amount of the verdict of the jury.

Hence, we conclude that the jury regarded the proceeds of the sale of the tobacco and sheeting as money received and held by James for the use of Borgeois, and upon that view of the proof, gave their verdict for that amount.    We think the proof well warranted this view of the transaction, and that the result meets the merits of the case.

We deem it unnecessary to notice the exceptions to the charge of the Court, as it is conceded that it is substantially correct—the objection being that in some of the phases of the case the instructions were not as full as they might have been.    But in this there was no reversible error, as no request was made for fuller instructions.    Upon the whole, we are satisfied that the merits of the case have been reached, and we affirm the judgment.